UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**NICHOLE MICHELLE MONTEITH**,                                :
                                                              :
                              Plaintiff,                      :
                                                              :   **MEMORANDUM**
               – against –                                    :   **DECISION AND ORDER**
                                                              :
                                                              :   20-CV-01648 (AMD)
**COMMISSIONER OF SOCIAL SECURITY**,                          :
                                                              :
                              Defendant.                      :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that she was not disabled for the purposes of receiving Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. For the reasons explained below, I grant the plaintiff's motion for judgment on the pleadings, deny the defendant's cross-motion and remand the case for further proceedings.

### BACKGROUND

The plaintiff filed for disability insurance benefits on October 3, 2013, alleging disability beginning on July 10, 2013 arising from a brain aneurysm she suffered that year. (Tr. 270-78.) Her application was denied in January of 2014 for "failure or refusal to submit to consultative examination." (Tr. 250.) It does not appear that the plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to challenge the decision.

The plaintiff filed for disability benefits again on August 27, 2015, for the same conditions, this time alleging an onset date of October 5, 2014. (Tr. 280-89.) Her second application was denied in December of 2015 after the Social Security Administration ("SSA")

determined that her impairments were not severe enough to keep her from working. (Tr. 142-47.) The plaintiff filed a timely request for a hearing on February 2, 2016. (Tr. 148-49.) She appeared *pro se* before ALJ Ellen Parker Bush on February 13, 2018. (Tr. 81.) After ALJ Bush explained the hearing procedure, the plaintiff decided to postpone the hearing so she could seek legal representation. (Tr. 88-90.)

On December 19, 2018, the plaintiff appeared with counsel for a hearing before ALJ Edward Malvey at which both she and a vocational expert ("VE") testified. (Tr. 101-03.) At the hearing, the plaintiff amended her onset date to August 30, 2017, because she returned to work as a bus driver for the New York City Transit Authority in September of 2016.[1] (Tr. 106-07.)

ALJ Malvey denied the plaintiff's claim for benefits on January 15, 2019. (Tr. 22.) He found that the plaintiff's brain aneurysm, transient ischemic attack ("TIA") and diabetes mellitus were severe impairments that significantly limited her ability to perform basic work activities. (Tr. 15-17.) However, he determined that her left eye and lower back issues were not severe.[2] (Tr. 16.) ALJ Malvey found that the plaintiff's combined impairments neither met nor medically equaled the severity of the applicable listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (Tr. 17.) He found that "that the [plaintiff] has the residual functional capacity to

---

[1] The plaintiff was terminated a year later, in August of 2017, for taking too much time off. (Tr. 111-12.)

[2] The plaintiff's problems with her lower back were documented in her medical records but not discussed during the hearing.

[3] A claimant whose impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, is presumed to be disabled and no further inquiry is needed. 20 C.F.R. §§ 404.1520(d), 404.1526; *see also Wetzel v. Berryhill*, 783 F. App'x 44, 46 (2d Cir. 2019) ("For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990))). The ALJ evaluated the plaintiff's impairments against listings 11.04, criteria for vascular insult to brain, and 11.18, criteria for traumatic brain injury. (Tr. 17.)

2

perform medium work . . . except that [she] . . . cannot climb ladders ropes or scaffolds [and] . . . should have no exposure to hazards such as unprotected heights and moving machinery." (Tr. 17.)

Ultimately, ALJ Malvey determined that "[t]he [plaintiff] is capable of performing past relevant work as a Bus Driver" because "[it] does not require the performance of work-related activities precluded by [her] residual functional capacity." (Tr. 21.) Although he acknowledged that the plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," he found that their "intensity, persistence and limiting effects . . . [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18.)

The Appeals Council denied the plaintiff's request for review on February 5, 2020. (Tr. 1.) She filed this action on April 1, 2020. (ECF No. 1.) Both parties have moved for a judgment on the pleadings. (ECF No. 5, 18.)

## STANDARD OF REVIEW

A district court reviewing the final decision of the Commissioner must "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). However, the court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d

3

Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

A district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). "An ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). But "when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner . . . for an explanation of the ALJ's reasoning is warranted." *Gonzales v. Comm'r of Soc. Sec.*, No. 16-CV-8445, 2017 WL 7310391, at *8 (S.D.N.Y. Dec. 21, 2017) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## DISCUSSION

The plaintiff claims that the ALJ did not give proper consideration to the effects of her impairments in determining her residual functional capacity ("RFC"). (ECF No. 16 at 29-30.) She also challenges the ALJ's conclusion that her impairments did not prevent her from performing her past work as a bus driver. (*Id.* at 35.) Finally, the plaintiff argues that the ALJ did not properly apply the Treating Physician Rule and did not give appropriate consideration to her subjective symptoms. (*Id.* at 37, 40.)

I. **Residual Functional Capacity**

   a. **Impairments**

The plaintiff first challenges ALJ Malvey's determination that her vision and lower back impairments are not severe. (ECF No. 16 at 29-30.) "[A] finding of 'not severe' should be made

4

if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)); *accord Winder v. Berryhill*, 369 F. Supp. 3d 450, 456 (E.D.N.Y. 2019). Moreover, an incorrect determination of severity is not grounds for remand if the ALJ considers the impairment at issue in subsequent steps of the analysis. *Williams v. Berryhill*, No. 16-CV-5606, 2018 WL 4636962, at *18 (E.D.N.Y. Sept. 27, 2018) ("Courts have held that error . . . in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis . . . ." (quoting *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 297 (W.D.N.Y. 2016))); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because these conditions were considered during the subsequent steps, any error was harmless.").

The ALJ found that "the objective evidence of record does not support any deficits to visual acuity or any light sensitivity alleged . . . [and] there is no evidence that [the plaintiff's] eye issues more than minimally limit [her] ability to perform basic work activities." (Tr. 16.) His conclusion is supported by the record. The records from the plaintiff's ophthalmologist suggest that she had chronic dryness and some abnormalities in her lenses. Her treating physician, Dr. Yardley Shoulton, did not opine that these conditions affected the plaintiff's ability to work. (Tr. 1450-51, 1567-79, 1583-84.)

The ALJ also found there was no evidence that the plaintiff's lower back pain "more than minimally limits her ability to perform basic work activities." (Tr. 16.) He acknowledged that the plaintiff had been evaluated and treated for low back pain, including a "broad based left foraminal disc herniation," but found that "she improved over time, and by March 2017 . . . [and]

5

during the time period at issue . . . she did not report any significant low back pain." (Tr. 16.) The record does not fully support that conclusion. The plaintiff first reported back pain after a sprain in August of 2015. (Tr. 692-94, 977-80.) She had an MRI in December of 2016, which showed that she had a herniated disc and a pinched nerve. (Tr. 481, 519.) In March of 2017, the plaintiff hurt her lower back again, and missed work. (Tr. 1038-42.) Later that month, the plaintiff's neurologist reported her back pain as "stable." (Tr. 479.) However, in August of 2018, Dr. Shoulton saw the plaintiff for low back pain, a pinched nerve and abnormal gait, and referred her to a neurologist for further testing and treatment. (Tr. 1585-89.) Given these repeated instances of back pain, including instances occurring after 2017, remand is warranted "because the ALJ's rationale is unclear in light of the record evidence." *Gonzales*, 2017 WL 7310391, at *8.

  b.  **Consideration of Non-Severe Impairments**

  The plaintiff asserts that the ALJ did not properly account for her vision and lower back impairments in his RFC assessment. (ECF No. 16 at 33-35.) In assessing RFC, the ALJ must evaluate the "combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *McIntyre v. Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)). ALJ Malvey acknowledged that the plaintiff's "[n]on-severe impairments can . . . when considered in conjunction with one another and the claimant's severe impairments, affect her residual functional capacity," and that "any effect that the claimant's non-severe impairments would have on her ability to function have been considered when formulating the residual functional capacity." (Tr. 16-17.)

  Although the plaintiff contends that the ALJ "fail[ed] to include any visual limitations at all," (ECF No. 16 at 34), the ALJ specifically addressed the plaintiff's visual impairments in his

RFC determination. He found that her testimony "was not consistent with the evidence of the record, as there are no significant findings or complaints for . . . vision loss." (Tr. 20.) He concluded that "[w]hile these symptoms may support some limitations from hazards and heights, the objective evidence does not support greater limitations than those [resulting from her brain aneurysm, TIA and diabetes mellitus]." (Tr. 20.)

There is, however, merit to the plaintiff's claim that the ALJ did not account for her back pain. While the ALJ cited the observation in the neurologist's treatment notes that there was "an exacerbation of back pain when [the plaintiff was] walking her dog" in March of 2017, he does not appear to have considered her lower back pain in determining her RFC. (Tr. 19.) "[T]he ALJ is required to consider *all* of plaintiff's impairments regardless of their severity." *Johnston v. Astrue*, No. 07-CV-5089, 2008 WL 4224059, at *9 (E.D.N.Y. Sept. 8, 2008) (citing 20 C.F.R. § 404.1545(a)(2)) (emphasis added). The failure to take those limitations into account in the RFC determination is grounds for remand. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (holding that the ALJ committed legal error by not accounting for the plaintiff's non-severe impairments).

## II. Step Four Determination

Next, the plaintiff takes issue with ALJ Malvey's reliance on the VE's determination that she could perform her past work as a bus driver. The plaintiff says that the VE's conclusion was wrong, and that the ALJ should not have accepted it. (ECF No. 16 at 35-36.) According to the plaintiff, "the ALJ's Step Four finding is clearly inconsistent with the requirements of this occupation, as actually and generally performed," and therefore "the ALJ's determination that [she] could return to her past work is misplaced." (*Id.* at 37-37.) The plaintiff argues that the ALJ's finding that "[s]he should have no exposure to hazards such as unprotected heights and

7

moving machinery" is at odds with the descriptions for "bus driver" in the Department of Labor's Dictionary of Occupational Titles ("DOT") and Occupational Information Network ("O*NET"), respectively.[4] (Tr. 17; ECF No. 16 at 35-36.)

The defendant argues that according to the DOT, "moving mechanical parts" are "not present" in a bus driver's job; therefore, the defendant maintains, the ALJ's finding was not inconsistent with the DOT's requirements.[5] (ECF No. 18 at 19 (citing DOT 913.463-010, 1991 WL 6878230).) It is true that the DOT's bus driver definition does not include moving mechanical parts. Nevertheless, the ALJ's finding that the plaintiff should have "no exposure to hazards such as . . . moving machinery," (Tr. 17), does not appear to be consistent with the plaintiff's job as it was actually performed. After all, the plaintiff drove a large bus and operated an automatic wheelchair lift, and was thus exposed to moving machinery and moving mechanical parts. Given this inconsistency, remand is appropriate so that the ALJ can clarify the rationale for his decision. *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 453 (N.D.N.Y. 2005) ("Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision." (citing *Pratts*, 94 F.3d at 39)); *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Remand may be appropriate, however, where an ALJ fails to assess a claimant's

---

[4] The plaintiff emphasizes that, according to the DOT, a bus driver "[m]ay make repairs and change tires[,] . . . inspect [the] the bus and check gas, oil, and water before departure . . . [and] drive . . . [the] bus to transport passengers . . . ." (ECF No. 16 at 35 (citing DOT 913.463-010).)

[5] "Unlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent." *Dennison v. Berryhill*, No. 17-CV-1059, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019). Although O*NET is more current, "[i]n the Second Circuit . . . it is well settled that 'the DOT, despite not having been updated in more than [twenty-five] years, remains an accepted basis for vocational opinion . . . .'" *Johnson v. Saul*, No. 3:19-CV-01222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) (quoting *Strong v. Berryhill*, No. 17-CV-1286, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019)). "Even if the VE's testimony was in conflict with O*Net [sic], there is no requirement that . . . [it] comply with that database." *Ryan v. Astrue*, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009).

capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.").[6]

### III. Treating Physician Rule

Dr. Shoulton began treating the plaintiff in January of 2013 and continued to treat her on a regular basis after her aneurysm surgery, from July 22, 2013 to December 14, 2018, for symptoms including dizziness, left-side numbness and weakness. (Tr. 962-93, 1076-1150, 1229-1326, 1538-39.) In an assessment from November of 2015, Dr. Shoulton stated that the plaintiff was not medically fit to perform her current occupation or any other work because of a vestibular imbalance and maxillary mass. (Tr. 1538.) In December of 2018, the month of the hearing, Dr. Shoulton opined that the plaintiff's symptoms were severe enough to interfere significantly with her ability to concentrate, left her incapable of even "low stress" work and would likely result in more than three absences each month. (Tr. 1580-84.) The state agency medical consultant did not treat or even examine the plaintiff. Rather, he "reviewed the record and opined that [she] could lift up to 50 pounds occasionally, stand, walk, and sit up to six hours each in a normal workday, and that the [plaintiff] should avoid climbing ladders, ropes, and scaffolds, and avoid hazards." (Tr. 25.)

In determining that the plaintiff had the residual functional capacity to perform her past relevant work as a bus driver, ALJ Malvey gave "great weight" to the state agency medical consultant's opinion, and "less weight" to that of Dr. Shoulton, finding that Dr. Shoulton's opinion was not consistent with or supported by medical evidence. (Tr. 20-21.) The ALJ explained that he gave "little weight" to Dr. Shoulton's 2018 opinion because it "provided no

---

[6] On remand, the ALJ should also consider the plaintiff's testimony that she occasionally had to "manually" lift the wheelchair ramp, in light of her physical impairments. (Tr. 109.)

9

explanation as to [the plaintiff's] environmental limitations or why she would be absent at least three times per month." (Tr. 20-21.) The ALJ further noted that "Dr. Shoulton's treatment notes during the period at issue do not support chronic issues with vertigo or dizziness . . . [and her] physical examinations also show largely normal findings, with no neurologic deficits." (Tr. 21.) He determined that Dr. Shoulton's 2015 assessment of the plaintiff was of "little value because it [was] issued well before August 2017 and [does not] consider the claimant's functional capacity during the time at issue." (Tr. 21.)

The "treating physician" rule requires that the ALJ give "controlling weight" to a treating physician's opinion of the nature and severity of the claimant's impairment if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[7] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). "'[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" *Id.* (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)).

When the ALJ does not give a treating physician's opinion controlling weight, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Id.* at 129 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is grounds for remand. *Halloran*, 362 F.3d at 33. The Second Circuit has held that to "override" a treating physician's opinion, "the ALJ must explicitly consider . . . (1) the frequency, length, nature, and

---

[7] The treating physician rule applies here because the plaintiff filed her claim before March 27, 2017. *See* 20 C.F.R. § 404.1527.

10

extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129); *accord* 20 C.F.R § 404.1527(c).

The ALJ did not consider the plaintiff's longstanding relationship with Dr. Shoulton in weighing her opinion.[8] The defendant argues that the ALJ "briefly alluded to" this factor "[e]arly in his decision" by "correctly characteriz[ing] Dr. Shoulton as Plaintiff's 'primary care provider.'" (ECF No. 18 at 21.) However, that passing reference does not provide the explicit consideration required by the treating physician rule. *Selian*, 708 F.3d at 418.

The defendant also argues that the ALJ was correct to discount Dr. Shoulton's opinion because it "was not well-supported . . . [and] not consistent with other evidence in the record." (ECF No. 18 at 21-22.) The ALJ decided that Dr. Shoulton's treatment notes and physical examinations did not comport with her statements about the plaintiff's capacity to work because they "show largely normal findings" and there were no complaints of "loss of sensation, dizziness, or poor balance." (Tr. 20-21.) However, by determining that Dr. Shoulton's records were not internally consistent with her statements about the plaintiff's capacity to work, the ALJ improperly substituted his own view of the medical evidence for Dr. Shoulton's opinion. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." (citing *Snell v. Apfel*, 177 F.3d 128, 131 (2d Cir. 1999))). "If the ALJ is not

---

[8] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i).

11

able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of [her] treating physician, violates his duty to develop the factual record . . . .").

Under these circumstances, the ALJ's reliance on the state agency medical consultant's opinion was error. *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("We have frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (quoting *Selian*, 708 F.3d at 419)); *Ridge v. Berryhill*, 294 F. Supp. 3d 33, 61 (E.D.N.Y. 2018) ("[T]he written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990))). Remand is appropriate so that the ALJ can reassess the plaintiff's RFC. If necessary, the ALJ should solicit additional information from Dr. Shoulton regarding the plaintiff's capacity to work and how the plaintiff's symptoms might influence her ability to perform certain tasks.[9]

---

[9] "[T]he ALJ has an obligation 'to recontact a treating physician for clarification if the treating physician's opinion is unclear[;]' [s]uch a duty is linked to the ALJ's affirmative obligation to develop the record." *Maneri v. Berryhill*, No. 17-CV-0322, 2018 WL 9988735, at *12 (E.D.N.Y. Aug. 29, 2018) (quoting *McAllister v. Colvin*, 205 F. Supp. 3d 314, 331 (E.D.N.Y. 2016) (citing *Burgess*, 537 F.3d at 129)); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician] . . . ."). This obligation exists regardless of whether the claimant is represented by counsel at the hearing. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## IV. Evaluation of Subjective Symptoms

ALJ Malvey concluded that although the plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18.) The plaintiff argues that ALJ Malvey relied on pre-onset evidence to evaluate her subjective symptoms, which was "internally inconsistent," and that his "reliance on [her] minimal activities as a means to show that she was not disabled [was] improper." (ECF No. 16 at 40-41.)

If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in [an evaluation of subjective symptoms]." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). However, the ALJ "is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Specifically, in evaluating subjective symptoms, the ALJ must consider "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of [the] claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of pain or other symptoms." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306-07 (E.D.N.Y. 2017) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)).

ALJ Malvey acknowledged his duty to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [her] functional

13

limitations," and, if lacking objective medical evidence, "consider other evidence in the record to determine if [her] symptoms limit the ability to do work-related activities." (Tr. 17-18.) However, he did not discuss the plaintiff's account of the causes of her symptoms,[10] explain how he balanced the various credibility factors or specify the extent to which he credited the plaintiff's testimony other than to deem it inconsistent with objective medical evidence. (Tr. 18-20.) These omissions are grounds for remand. *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the credibility factors) (collecting cases).

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, the defendant's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
July 9, 2021

---

[10] For example, the plaintiff testified that she could walk "maybe a block or two, but . . . there'll be resting," that she has to be careful bending down because "any sudden movements . . . throws [her] into the dizziness" and that she could kneel or squat down without getting dizzy if she moved "carefully, but getting up is the problem" because if she "move[s] quickly, it's a problem." (Tr. 118-19.)